IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL E. POLLAK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-2550 |
| | § | |
| JACOB J. LEW, SECRETARY | § | |
| OF THE TREASURY,[1] | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Pending before the court[2] is Defendant's Motion for Summary Judgment (Doc. 26).  The court has considered the motion, the responses and replies thereto, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Defendant's motion.

**I.  Case Background**

Plaintiff Michael Pollak ("Plaintiff") filed this employment action against his former employer, the Internal Revenue Service ("IRS" or "Defendant), alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[3] and the Age Discrimination in Employment Act ("ADEA").[4]

---

[1]     On February 27, 2013, Jacob J. Lew was confirmed as the Secretary of the Treasury.  Therefore, pursuant to Federal Rule of Civil Procedure 25(d), the court substitutes Jacob J. Lew as the defendant in this lawsuit.

[2]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Doc. 16.

[3]     42 U.S.C. §§ 2000e-2000e-17.

[4]     29 U.S.C. §§ 621-634.

1.  **Factual History**

Plaintiff, a white, Jewish male over the age of forty,[5] began his employment with the IRS as a "career-conditional, 'full-time seasonal'" tax specialist on or about November 25, 2002.[6]  As a full-time seasonal employee, Plaintiff worked as needed for a portion of the year and was placed in a non-duty, non-pay status for the remainder of the year.[7]  Tax specialists, including Plaintiff, met with taxpayers within the Taxpayer Assistance Center ("TAC").[8] Plaintiff's job duties included addressing taxpayers' questions and concerns, submitting relevant documents on behalf of taxpayers, and assisting taxpayers with completing their tax forms.[9]  On or about June 28, 2003, Plaintiff was placed in a non-duty, non-pay status.[10] In October 2003, Plaintiff received notice that the IRS was terminating his employment for alleged misrepresentations on his job

---

[5]     In this lawsuit, Plaintiff identifies himself as a white male.  In previous administrative actions, Plaintiff also identified himself as Hispanic.

[6]     Doc. 26-7, Ex. 2 to Def.'s Mot. for Summ. J., Def.'s Resp. to Interrogs. p. 1; see Doc. 26-2, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 77 (identifying position as "full-time, seasonal, career-conditional, tax specialist-tax resolution representative, a GS0526-07.").

[7]     See Doc. 30-4, Ex. 3 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 47.

[8]     See Doc. 26-2, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 80. Plaintiff also worked with other employees in a communal setting prior to the installation of individual cubicles and computers for the tax specialists.  See id. pp. 80-81.

[9]     See id. pp. 79-80.

[10]    See id. pp. 84-85.

application.[11]  Plaintiff was terminated on December 13, 2003, after which date, Plaintiff filed a complaint of discrimination and an appeal of his termination with the Merit Systems Protection Board ("MSPB").[12]   Ultimately, in January 2006, the MSPB reversed Plaintiff's termination, and, on March 21, 2006, Plaintiff returned to work with the IRS.[13]

In August 2006, while Plaintiff was in a non-duty, non-pay status, James Matlock ("Matlock") became the Group Manager of the TAC in which Plaintiff worked.[14]   According to Plaintiff, in November 2007, Matlock began making comments to Plaintiff regarding Plaintiff's hygiene and odor, which caused Plaintiff to file an Equal Employment Opportunity ("EEO") complaint.[15]  Both taxpayers and employees had complained to Matlock about Plaintiff's inadequate hygiene.[16]  Two months later, in late January 2008, Matlock issued Plaintiff a personal hygiene directive noting that Plaintiff's "fail[ure] to take appropriate care of [his] personal hygiene has

---

[11]     See id. p. 85.

[12]     See id. pp. 86-87.

[13]     See id. pp. 90-91.

[14]     See Doc. 30-1, Ex. 1 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Matlock's Dep. p. 8.  Matlock also supervised a second TAC location. See id.

[15]     See Doc. 26-2, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 101-02, 180-82.

[16]     See Doc. 26-10, Ex. 4 to Def.'s Mot. for Summ. J., Matlock's Dep. p. 194.

caused disruption in the work area, which is not acceptable."[17]
Plaintiff was directed "to maintain a level of personal hygiene
acceptable to a common office environment and groom yourself in a
manner appropriate to the surrounding into which your work
assignments take you."[18]   The directive advised Plaintiff that
failure to comply constituted a policy violation and "could result
in disciplinary action up to and including removal from the
service."[19]   Also in January and by means of Plaintiff's EEO
proceedings, Matlock learned that Plaintiff was Jewish.[20]

Plaintiff filed another EEO complaint of discrimination on or
about March 5, 2008.[21]   Four months later, on July 2, 2008, Matlock
completed a performance evaluation of Plaintiff for the period
November 14, 2007, through May 12, 2008.[22]   Plaintiff received an
overall rating of "Fully Successful," and, on a scale of one-to-
five, Plaintiff scored a three in each of the evaluated "critical
job elements" ("CJEs"): Employee Satisfaction- Employee
Contribution, Employee Satisfaction- Knowledge, Customer

---

[17]   Doc. 26-3, Ex. 1-9 to Def.'s Mot. for Summ. J., Hygiene Directive.

[18]   Id.

[19]   Id.

[20]   See Doc. 30-1, Ex. 1 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ.
J., Matlock's Dep. p. 24.

[21]   See Doc. 31-13, Ex. 24 to Pl.'s Resp. in Opp'n to Def.'s Mot. for
Summ. J., Pl.'s Admin. Compl. History.

[22]   See Doc. 26-3, Ex. 1-8 to Def.'s Mot. for Summ. J., Performance Eval.
Dated July 2, 2008.

Satisfaction- Application, Business Results- Quality, and Business Results- Efficiency.[23]  The evaluation noted that Plaintiff needed to improve on "completing your assignments in a timely manner and ensuring you are available to take customers," in order to maintain a rating of three in the category of Employee Satisfaction-Employee Contribution.[24]  The evaluation pointed out similar performance shortcomings and recommended improvements in the remaining areas of evaluation.[25]

In a letter dated January 15, 2009, Plaintiff was officially reprimanded for his failure to conform to Matlock's January 2008 personal hygiene directive and for absent-without-leave ("AWOL") charges.[26]  The reprimand specifically cited two instances of AWOL charges arising from Plaintiff's being sent home for failing to "properly groom" himself.[27]  Four months later, in June 2009, Matlock issued Plaintiff an annual performance evaluation for the period June 1, 2008, through May 31, 2009.[28]  Plaintiff again

---

[23]    Id.

[24]    Id.

[25]    See id.

[26]    See Doc. 26-3, Ex. 1-10 to Def.'s Mot. for Summ. J., Reprimand Dated Jan. 15, 2009; Doc. 26-2, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 105.

[27]    Doc. 26-3, Ex. 1-10 to Def.'s Mot. for Summ. J., Reprimand Dated Jan. 15, 2009.

[28]    See Doc. 26-3, Ex. 1-14 to Def.'s Mot. for Summ. J., Performance Eval. Dated June 2009.  According to Matlock, Plaintiff entered into a Grade 9 position from a Grade 7 position in March 2009, which required that Plaintiff "perform at a higher level."  Id.; see also Doc. 26-10, Ex. 4 to Def.'s Mot. for Summ. J., Matlock's Dep. p. 199.

received an overall rating of "Fully Successful," and scored a three in each of the evaluated categories.[29]  The evaluation noted that "there are some areas of concerns which you [Plaintiff] must improve on in order to retain the current rating in the future."[30]  It continued, stating that Plaintiff maintained the same ratings as the July 2008 evaluation because he was not given a mid-year evaluation.[31]  Regarding the evaluated categories, Plaintiff's performance deficiencies included: lack of professionalism; failure to work cooperatively with other employees; failure to report absences; commission of errors in tax law when dealing with clients; failure to follow general office guidelines; failure to properly use research tools; and failure to respond appropriately to customer needs.[32]

Also in June, Plaintiff was issued a two-day suspension notice effective July 6, 2009, arising from his "poor personal hygiene."[33] That same day, Plaintiff filed a formal EEO complaint.[34]

---

[29]    See Doc. 26-3, Ex. 1-14 to Def.'s Mot. for Summ. J., Performance Eval. Dated June 2009.

[30]    Id.

[31]    Id.

[32]    See id.

[33]    Doc. 26-3, Ex. 1-13 to Def.'s Mot. for Summ. J., Suspension Notice Dated June 15, 2009; see also Doc. 26-2, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 106-07.

[34]    See Doc. 31-13, Ex. 24 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Admin. Compl. History; see also Doc. 26-2, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 107.

Five months later, in late November 2009, Matlock proposed to suspend Plaintiff for fifteen days for failing to follow Matlock's directive and for AWOL charges.[35]   In early December 2009, Matlock completed a mid-year review of Plaintiff's performance.[36]   Plaintiff was given a rating of "Minimally Successful" in three of the five CJEs, and a rating of "Fully Successful" in the remaining two CJEs.[37]   In the narrative explanation of the mid-year review ratings, Matlock cited the performance deficiencies identified in the June 2009 evaluation.[38]   Overall, Plaintiff's performance fell below Defendant's retention standard.[39]   The evaluation further indicated that Plaintiff previously had been assigned two on-the-job instructors ("OJIs") to assist him with any client issues.[40]   One month later, on January 8, 2010, the proposed fifteen-day suspension was confirmed by the acting area director of the IRS and became effective on January 18, 2010.[41]

---

[35]   *See* Doc. 26-7, Ex. 2 to Def.'s Mot. for Summ. J., Def.'s Resp. to Interrogs. p. 2; *see also* Doc. 26-3, Ex. 1-15 to Def.'s Mot. for Summ. J., Letter Dated Jan. 8, 2010.

[36]   *See* Doc. 26-3, Ex. 1-16 to Def.'s Mot. for Summ. J., Mid-Year Eval. Dated Dec. 7, 2009.

[37]   *See id.*

[38]   *See id.*; *see also* Doc.26-10, Ex. 4 to Def.'s Mot. for Summ. J., Matlock's Dep. p. 110.

[39]   *See* Doc. 26-3, Ex. 1-16 to Def.'s Mot. for Summ. J., Mid-Year Eval. Dated Dec. 7, 2009.

[40]   *See id.*

[41]   *See* Doc. 26-3, Ex. 1-15 to Def.'s Mot. for Summ. J., Letter Dated Jan. 8, 2010.

Sometime in or after mid-February 2010, Matlock completed an undated evaluation of Plaintiff's performance from June 1, 2009, through February 16, 2010, in order to suppress Plaintiff's otherwise automatic within-grade pay increase.[42]  Plaintiff was given an overall rating of "Unacceptable."[43]   Specifically, Plaintiff's performance was unacceptable in two CJEs, minimally successful in one CJE, and fully successful in the remaining two CJEs.[44]  On February 19, 2010, Matlock notified Plaintiff of the intent to deny Plaintiff's within-grade increase as a result of his deficient work performance and provided Plaintiff with examples of his shortcomings, along with recommendations for improvement.[45]  The same day, Plaintiff was placed on a sixty-day Performance Improvement Plan ("PIP").[46]   The PIP also enumerated examples of Plaintiff's shortcomings and identified means by which Plaintiff could improve his performance.[47]   According to the PIP, Carolyn Darkis ("Darkis") was Plaintiff's OCI and would sit with him once

---

[42]    See Doc. 30-11, Ex. 10 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Undated Performance Eval.; Doc. 30-2, Ex. 2 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Matlock's Dep. p. 114.

[43]    See Doc. 30-11, Ex. 10 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Undated Performance Eval.

[44]    See id.

[45]    See Doc. 26-3, Ex. 1-18 to Def.'s Mot. for Summ. J., Letter Dated Feb. 19, 2010 Re: Within-Grade Pay Increase.

[46]    See Doc. 26-4, Ex. 1-19 to Def.'s Mot. for Summ. J., PIP Notice; Doc. 30-3, Ex. 3 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 122.

[47]    See Doc. 26-4, Ex. 1-19 to Def.'s Mot. for Summ. J., PIP Notice.

a week to assist with customers.[48]  An IRS manager, Cora Northington ("Northington"),[49] was assigned to monitor three of Plaintiff's contacts per week and sat with Plaintiff once a week during the sixty-day PIP.[50]  Darkis and Northington provided feedback to both Plaintiff and Matlock regarding Plaintiff's performance throughout the duration of the PIP.[51]

On March 2, 2010, Matlock gave Plaintiff the day off to testify at an administrative hearing on behalf of a coworker, Ify Lee ("Lee"), who had filed an EEO complaint against the IRS a few years earlier.[52]  Matlock also gave time off to other employees who testified at Lee's hearing in the days that followed.[53]  Approximately one week later, on March 10, 2010, Plaintiff filed two EEO complaints.[54]

In a memorandum dated June 4, 2010, and entitled "Notice of Unacceptable Performance at the Conclusion of the Opportunity to

---

[48]   See id.

[49]   At the time of the aforementioned events, Northington was a manager at another IRS location in Houston, Texas.  See Doc. 26-10, Ex. 4 to Def.'s Mot. for Summ. J., Matlock's Dep. p. 146.

[50]   See Doc. 26-4, Ex. 1-19 to Def.'s Mot. for Summ. J., PIP Notice; Doc. 26-2, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 123.

[51]   See Doc. 26-4, Ex. 1-19 to Def.'s Mot. for Summ. J., PIP Notice; Doc. 26-2, Exs. 1-20, 1-21, 1-22, 1-23, 1-25, 1-26, & 1-27 to Def.'s Mot. for Summ. J., PIP Feedback Reports.

[52]   See Doc. 26-2, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 197-98.

[53]   See id. p. 198.

[54]   See Doc. 31-13, Ex. 24 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Admin. Compl. History.

Improve Period," Matlock informed Plaintiff that Plaintiff's performance in two out of his three deficient CJEs had not improved during the PIP.[55] Matlock also provided Plaintiff with a memorandum notifying him about the denial of his within-grade increase, which was effective as of May 2010.[56] The latter memorandum consisted of twenty-eight pages detailing Plaintiff's performance deficiencies.[57] Two weeks later, Matlock issued Plaintiff an annual performance evaluation for the period June 1, 2009, through May 31, 2010.[58] Plaintiff's overall rating was "Unacceptable," with his performance evaluated as unsuccessful in two CJEs, minimally successful in two CJEs, and fully successful in one CJE.[59]

Two weeks later, on June 30, 2010, Matlock provided Plaintiff with a letter proposing to reduce Plaintiff's grade and pay or to terminate Plaintiff's employment with the IRS as a result of his deficient performance.[60] The letter set forth instances of

---

[55]    Doc. 26-4, Ex. 1-31 to Def.'s Mot. for Summ. J., Mem. Dated June 4, 2010 Re: PIP Performance.

[56]    See Doc. 26-4, Ex. 1-32 to Def.'s Mot. for Summ. J., Mem. Dated June 4, 2010 Re: Within-Grade Increase; Doc. 31-15, Ex. 26 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Notification of Personnel Action.

[57]    See Doc. 26-4, Ex. 1-32 to Def.'s Mot. for Summ. J., Mem. Dated June 4, 2010 Re: Within-Grade Increase.

[58]    See Doc. 26-5, Ex. 1-33 to Def.'s Mot. for Summ. J., Performance Eval. Dated June 17, 2010.

[59]    See id.

[60]    See Doc. 26-5, Ex. 1-34 to Def.'s Mot. for Summ. J., Letter Dated June 30, 2010.

shortcomings in Plaintiff's work performance.[61]  Plaintiff submitted a written reply to the June 30 letter, denying the performance deficiencies identified in the letter.[62]  Plaintiff's union representative also submitted a written reply opposing Matlock's June 30 proposal.[63]  Three months later, on September 21, 2010, Plaintiff filed another EEO charge against the IRS.[64]

Having received the June 30 proposal and the replies thereto, Frank Jugo ("Jugo"), an IRS Area Director, issued a decision on November 19, 2010, terminating Plaintiff's employment effective November 26, 2010.[65]  On the effective date of his termination, Plaintiff filed an amendment to his September 21, 2010 EEO charge of discrimination and retaliation.[66]  Plaintiff was replaced in February 2011 by Reginald Reed ("Reed"), an African American who was

---

[61]    See id.

[62]    See Docs. 26-5 & 26-6, Ex. 1-36 to Def.'s Mot. for Summ. J., Pl.'s Reply to June 30, 2010 Letter.

[63]    See Doc. 26-6, Ex. 1-37 to Def.'s Mot. for Summ. J., Nat'l Treasury Employee Union Reply to June 30, 2010 Letter.

[64]    See Doc. 31-13, Ex. 24 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Admin. Compl. History; Doc. 26-2, Ex. 3 to Def.'s Mot. for Summ. J., Letter from Dept. of Treasury; see also Doc. 26-2, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 30.

[65]    See Doc. 26-5, Ex. 1-35 to Def.'s Mot. for Summ. J., Termination Letter Dated Nov. 19, 2010; Doc. 26-12, Ex. 8 to Def.'s Mot. for Summ. J., Jugo's Decl. ¶ 3.

[66]    See Doc. 31-13, Ex. 24 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Admin. Compl. History.  The record indicates that this amendment added his termination as a basis for discrimination, in conjunction with the June 2010 notices of his unacceptable work performance and denial of a within-grade pay increase leading up to his termination.  See Doc. 26-8, Ex. 3 to Def.'s Mot. for Summ. J., Admin. File pp. 149-52.

younger than Plaintiff.[67]   John Lama ("Lama") was hired in March
2011 as a bilingual full-time seasonal tax specialist.[68]

## 2.  <u>Procedural History</u>

Between the beginning of his employment with the IRS in 2003
and his termination in 2010, Plaintiff filed approximately eight
formal administrative complaints of discrimination or retaliation
against the IRS.[69]   On July 9, 2011, Plaintiff filed this lawsuit,
alleging discrimination based on race, religion, and age, as well
as retaliation based on his engaging in protected activity.[70]

Defendant filed the pending motion for summary judgment on
August 9, 2012.[71]   Approximately one month later, on September 3,
2012, Plaintiff filed a response to Defendant's motion, to which
Defendant replied on September 10, 2012.[72]   Plaintiff filed a
supplemental response to Defendant's summary judgment motion on
October 3, 2012.[73]

---

[67]    <u>See</u> Doc. 26-10, Ex. 4 to Def.'s Mot. for Summ. J., Matlock's Dep. pp.
23, 30.  The record indicates that Reed was hired as a Grade 7 employee, whereas
Plaintiff was a Grade 9 employee at the time of his termination.  <u>See</u> Doc. 30-2,
Ex. 2 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Matlock's Dep. p. 32.

[68]    <u>See</u> <u>id.</u> pp. 38-39.

[69]    <u>See</u> Doc. 30-3, Ex. 3 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ.
J., Pl.'s Dep. p. 125; Doc. 31-13, Ex. 24 to Pl.'s Resp. in Opp'n to Def.'s Mot.
for Summ. J., Pl.'s Admin. Compl. History.

[70]    <u>See</u> Doc. 1, Pl.'s Orig. Compl.; <u>see also</u> Doc. 14, Pl.'s 1st Am.
Compl.

[71]    <u>See</u> Doc. 26, Def.'s Mot. for Summ. J.

[72]    <u>See</u> Doc. 30, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J.; Doc.
32, Def.'s Reply in Support of Mot. for Summ. J.

[73]    <u>See</u> Doc. 33, Pl.'s Suppl. Resp. to Def.'s Mot. for Summ. J.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary

judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

### III.  Analysis

Defendant moves for summary judgment on all of Plaintiff's causes of action: (1) discrimination based on race and religion under Title VII; (2) age discrimination under the ADEA; and (3) retaliation under Title VII and the ADEA.

### A.  <u>Discrimination under Title VII and the ADEA</u>

Plaintiff alleges that Defendant discriminated against him on the basis of his race, religion, and age.  Defendant argues that, assuming Plaintiff could establish a prima facie case of race, religion, or age discrimination, Plaintiff cannot establish that Defendant's reason for terminating Plaintiff was a pretext for discrimination.

#### 1.  Prima Facie Case

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In the absence of direct evidence, as is the case here, courts analyze discrimination and retaliation claims under the burden-shifting approach first articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) [hereinafter <u>McDonnell Douglas</u>], and modified in <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003), and <u>Rachid v. Jack In The Box, Inc.</u>, 376 F.3d 305 (5th Cir. 2004). Under this "modified <u>McDonnell Douglas</u> approach," a plaintiff may

trigger a presumption of discrimination by establishing a prima facie case. Rachid, 376 F.3d at 312.

A prima facie case of race or religion discrimination requires the plaintiff to show that he: (1) is a member of a protected class; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by someone who is not a member of the protected classes to which the plaintiff belongs or was treated less favorably than similarly situated employees of a different race or religion. See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001)(addressing race discrimination claim). In the Fifth Circuit, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."[74] McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007). The court also notes that proof of disparate treatment can establish the fourth element of the plaintiff's prima facie case. See Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005), cert. denied, 413 U.S. 471 (2006); Okoye, 245 F.3d at 513. "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." Bryant, 413 F.3d at 478.

---

[74] Plaintiff cites Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), for the proposition that the denial of overtime, training, a detail to Atlanta, Georgia, and a within-grade salary increase constitute adverse employment actions. The court finds no merit to this argument as White only abrogated the Fifth Circuit's approach to Title VII retaliation claims, not discrimination claims. See McCoy, 492 F.3d at 559.

16

Similar to Title VII, the ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).  A plaintiff with an ADEA claim must exhaust administrative remedies before pursuing those claims in federal court.  <u>Julian v. City of Houston, Tex.</u>, 314 F.3d 721, 725 (5th Cir. 2002).  In order to prevail on an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision."[75]  <u>Gross v. Fin. Servs., Inc.</u>, 577 U.S. 167, 177-78 (2009).  As Plaintiff's ADEA claim is based on circumstantial evidence, the burden-shifting framework of <u>McDonnell Douglas</u> also applies here.  <u>Sandstad v. CB Richard Ellis, Inc.</u>, 209 F.3d 893, 896-97 (5th Cir. 2002) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802); <u>see</u> <u>Cheatham v. Allstate Ins. Co.</u>, 465 F.3d 578, 582 (5th Cir. 2006) (per curiam) (referring to the Fifth Circuit's burden-shifting standard for ADEA claims as "well-settled"); <u>but see</u> <u>Gross</u>, 557 U.S. at 175 n.2 ("[T]he Court has not definitively decided whether the evidentiary framework of <u>McDonnell Douglas</u> . . . utilized in Title VII cases is appropriate in the ADEA context.").

Under this standard, a plaintiff must first establish a prima facie case of discrimination.  <u>Reeves v. Sanderson Plumbing Prods.,</u>

---

[75]  The Supreme Court's decision in <u>Gross</u> rejected the application of Title VII's "motivating factor" standard to ADEA mixed-motive cases.  <u>See</u> <u>Gross</u>, 557 U.S. at 174-75.

Inc., 530 U.S. 133, 142 (2000).   A prima facie case of age discrimination requires that the plaintiff prove that he (1) belongs to the protected group of persons over the age of forty, (2) was qualified for his position, (3) was discharged or suffered an adverse employment action, and (4) was replaced with someone younger or outside the protected group.   Sandstad, 309 F.3d at 897; see Mitchell v. Snow, 326 F. App'x 852, 854 (5th Cir. 2009); 29 U.S.C. § 631 (applying the ADEA only to individuals at least forty years old).

Defendant does not challenge Plaintiff's ability to establish a prima facie case of race and age discrimination arising from Plaintiff's termination and the denial of Plaintiff's 2010 within-grade increase, but argues that Plaintiff may not complain about other work-related decisions that are not adverse employment actions.   Here, Plaintiff complains that, unlike some of his coworkers, he was denied training, assignment to a work detail for employees with vision impairments, and overtime.[76]   These are not actionable adverse employment actions.   See Jones v. BP Amoco Chem. Co., slip op., 2012 WL 1424986, at *5 (S.D. Tex. Apr. 23, 2012) (citing cases showing that "[t]he Fifth Circuit has consistently

---

[76]   Plaintiff also complains that he was denied access to the internet during the months leading up to his termination, that Matlock denied his request for a day off to get eye surgery and that he was denied the opportunity to participate in drafting IRS manuals.   Aside from the fact that these events do not constitute adverse employment actions, Plaintiff has not identified any comparators who were treated more favorably under nearly identical circumstances. See Okoye, 245 F.3d at 514.

refused to find that a denial of training can constitute an adverse employment action.") (unpublished); Hart v. Life Care Ctr. of Plano, 243 F. App'x 816, (5th Cir. 2007) (holding that an employee failed to establish that he suffered an adverse employment action based on actions including the denial of an overtime request).  The court, therefore, will not consider these actions in considering Plaintiff's discrimination claims.  Thus, the adverse employment actions applicable to Plaintiff's claims of race and age discrimination are his termination and the denial of his 2010 within-grade increase.

With respect to Plaintiff's claim of religion discrimination, Defendant challenges Plaintiff's ability to establish a prima facie case under Title VII.  Specifically, Defendant contends that Plaintiff cannot prove the final element of his prima facie case, namely, that he was replaced by someone who is not of his protected class, Jewish.  The court agrees.

The parties do not dispute that Plaintiff was replaced by Reed, an African-American younger than Plaintiff, in February 2011. Plaintiff also identifies Lama as his replacement.  However, Plaintiff has not produced any competent summary judgment evidence that either Reed or Lama was not of the Jewish faith.  Plaintiff merely believes that his replacement was not Jewish because "if he was Jewish, I'd probably know about it."[77]  Moreover, Plaintiff has

---

[77]     Doc. 26-2, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 208.

not directed the court to any competent summary judgement evidence that similarly situated, non-Jewish employees were treated more favorably.[78]  Because Plaintiff has thus failed to bear his burden of proof as to the final element of a prima facie case of religion discrimination, summary judgment in favor of Defendant is **GRANTED** on Plaintiff's Title VII religion discrimination claim.

Given that Defendant does not challenge Plaintiff's prima facie case of race and age discrimination, the court proceeds to the next stage of the McDonnell Douglas burden-shifting scheme.

### 2.  Defendant's Legitimate, Nondiscriminatory Reason

Once a plaintiff has established a prima facie case, the burden of production shifts to the defendant to proffer legitimate, nondiscriminatory reasons for its actions.  Okoye, 245 F.3d at 513. If the defendant satisfies this burden, then the presumption of discrimination dissolves and the burden shifts back to the plaintiff.  See Reeves, 530 U.S. at 142-43; Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002); see also Sandstad, 309 F.3d at 897-98 (emphasizing the defendant's burden is one of production, not persuasion).

Here, Defendant asserts that it denied Plaintiff's within-grade

---

[78]     The court notes that Plaintiff compares himself to several employees whom Plaintiff believes to be similarly situated.  Notably, Plaintiff's own evidence indicates that the religion of the only other employees who held the same seasonal position as (but lower grade than) Plaintiff during Plaintiff's employment with the IRS, Juan Cardenas and Criscella Contreras, was unknown.  See Doc. 31-10, Ex. 21 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., IRS Employee Id. List.

increase and ultimately terminated Plaintiff because of his deficient work performance. In support of the articulated reason for its actions, Defendant directs the court's attention to Plaintiff's performance evaluations from 2007 through 2010, Plaintiff's placement on a PIP, and followup memoranda regarding Plaintiff's performance during and upon completion of the PIP. Specifically, the summary judgment evidence shows that, from 2007-2009, Plaintiff was performing at a fully successful level, as reflected by Matlock's July 2008 and June 2009 annual evaluations of Plaintiff. These evaluations, however, noted that there were areas of concern in Plaintiff's performance and that Plaintiff would need to improve in order to maintain his fully successful rating.

Subsequent evaluations of Plaintiff indicate that Plaintiff did not remedy the shortcomings cited in his July 2008 and June 2009 evaluations. Plaintiff's performance ratings subsequently deteriorated to the point that he was placed on a PIP in order to improve his performance. As reflected by Northington's and Darkis's feedback throughout the duration of Plaintiff's PIP, in conjunction with Matlock's June 4, 2010 notice, Plaintiff was unsuccessful at remedying his performance deficiencies under the PIP, leading to Matlock's June 30, 2010 proposal to terminate or demote Plaintiff for deficient work performance. Ultimately, Jugo terminated Plaintiff for the reasons established by Matlock's proposal.

The court finds that Defendant has thus articulated a legitimate, nondiscriminatory reason for its conduct, thereby rebutting the presumption of discrimination.  The court now turns to the final stage of the McDonnell Douglas burden-shifting scheme.

### 3.  Pretext or Mixed-Motives

Under Title VII, after the defendant proffers a legitimate, nondiscriminatory reason for its conduct, the burden shifts back to the Plaintiff to produce some evidence either that "(1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), or (2) that the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." Davis v. Farmers Ins. Exch., 376 F. App'x 517, 519 (5th Cir. 2010).  Under the ADEA, the plaintiff must show that "age was the 'but-for' cause of the challenged employment action." Id.

In this case, Plaintiff attempts to show that Defendant's proffered reason was false or part of a mixed-motive.  Plaintiff, however, has not proffered any non-speculative evidence that would connect Defendant's termination decision or denial of Plaintiff's 2010 within-grade increase to his charge of race or age discrimination.  Rather, he simply believes that race and age must have been factors in his termination and in the denial of his 2010

within-grade increase.[79]  With regards to his age discrimination claim, for example, Plaintiff speculated at his deposition that Matlock was complaining about Plaintiff's "elderly aroma" when Matlock issued a directive using the terms "hygiene" and "odor."[80] Plaintiff then conceded that he had learned about "elderly aroma" while listening to the radio on the day before his deposition and that this was a term used by Plaintiff, not Matlock.[81]   An employee's subjective belief that he was the victim of discrimination is insufficient to create an inference of discriminatory intent.  Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 313 (5th Cir. 1999).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey, 286 F.3d at 269. There is simply no evidence of race-based or age-based animus in the record.

To establish disparate treatment as means of establishing pretext or mixed-motives, Plaintiff must show that Defendant "gave preferential treatment to [] [another] employee under nearly identical circumstances;" that is, "that the misconduct for which [Plaintiff] was discharged was nearly identical to that engaged in

---

[79]   See, e.g., Doc. 26-2, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 157-59, 178-82.

[80]   Id. pp. 180-82

[81]   Id. pp. 181-82.

by [other] employee[s]." <u>Okoye</u>, 245 F.3d at 514 (internal
quotations and citations omitted). Plaintiff must show that other
similarly situated employees of a different race or younger age
received performance reviews reflecting unsuccessful performance
ratings, failed to remedy his or her performance, yet were not
terminated. Plaintiff has produced no such competent summary
judgment evidence. In the absence of competent summary judgment
evidence of pretext or mixed-motives, the court **GRANTS** summary
judgment in favor of Defendant on Plaintiff's discrimination claims.


**B.   <u>Retaliation</u>**

     Plaintiff alleges that Defendant retaliated against him for
participating in protected activity under Title VII and the ADEA.
Defendant argues that Plaintiff cannot establish a prima facie case
of retaliation, and that, even if Plaintiff could establish a prima
facie case, Plaintiff cannot show that Defendant's legitimate,
nonretaliatory reasons for its conduct were a pretext for
retaliation or were part of a mixed-motive.

     Plaintiff's retaliation claims are subject to a similar burden-
shifting construct as his Title VII and ADEA discrimination claims.
<u>See</u> <u>Septimus v. Univ. of Houston</u>, 399 F.3d 601, 608 (5th Cir. 2005).
 In order to recover on a Title VII or ADEA retaliation claim, the
plaintiff must first establish a prima facie case showing that: (1)
he engaged in a protected activity; (2) an adverse employment action

occurred; and (3) a causal link existed between the protected activity and the adverse action. Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002); Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 267 (5th Cir. 1994). Once an employee has set out a prima facie case, the burden shifts to the employer to state a legitimate, nonretaliatory reason for its action. Gee, 289 F.3d at 345; Grizzle, 14 F.3d at 267. If the employer can provide such a reason, the burden shifts back to the employee to show that the stated reason is actually a pretext for retaliation or a  pretext alternative for retaliation in the Title VII context. Gee, 289 F.3d at 345; Grizzle, 14 F.3d at 267.

### 1. Prima Facie Case

With regards to the first prong of a prima facie case of retaliation, a plaintiff has engaged in a protected activity if he "(1) 'opposed any practice made an unlawful employment practice' by Title VII [or the ADEA] or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII [or the ADEA]." Grimes v. Tex. Dep't of Mental Health and Mental Retardation, 102 F.3d 137, 140 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3); Grizzle, 14 F.3d at 267. Defendant does not dispute that Plaintiff engaged in protected activities by filing internal EEO charges and by testifying at an EEO hearing on behalf of a former co-worker, Lee.

Turning to the second prong, the adverse employment action

25

requirement is not limited to hiring, granting leave, discharging, promoting or compensating, but may encompass any challenged action that a reasonable employee may consider materially adverse, "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 68 (quotation marks and internal citation omitted)). The Court noted that "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." Id.

Plaintiff argues that his poor performance evaluations, placement on a PIP, AWOL charges, denial of training, denial of a within-grade increase, denial of a transfer, and termination constitute adverse employment actions for purposes of a retaliation claim. As these actions, if taken in retaliation, could dissuade a reasonable employee from engaging in protected activity, the court finds that Plaintiff has satisfied the second element of his prima facie case.[82]

Turning to the final prong of a prima facie case, a plaintiff must put forward some evidence of a causal link between the adverse employment action and the protected activity. Long v. Eastfield Coll., 88 F.3d 300, 305 n.4 (5th Cir. 1996). The existence of a causal link may be determined by examining three factors: (1) the employee's past disciplinary record; (2) whether the employer followed its usual disciplinary procedures when taking the adverse

---

[82] Defendant does not directly challenge Plaintiff's ability to satisfy the second element of his prima facie case of retaliation.

action; and (3) the temporal relationship between the protected activity and the adverse action.  <u>Nowlin v. Resolution Trust Corp.</u>, 33 F.3d 498, 507-08 (5th Cir. 1994); <u>see</u> <u>Dehart v. Baker Hughes Oilfield Operations</u>, 214 F. App'x 437, 442 (5th Cir. 2007) (citing <u>Nowlin</u>, 33 F.3d at 508 (5th Cir. 1994)) (unpublished).

Close timing between an employee's protected activity and an adverse action against her may provide the "causal connection required to make out a prima facie case of retaliation." <u>Swanson v. Gen. Servs. Admin.</u>, 110 F.3d 1180, 1188 (5th Cir. 1997). However, temporal proximity alone may be a significant factor but not necessarily determinative of retaliation.  <u>Mayberry v. Vought Aircraft Co.</u>, 55 F.3d 1086, 1092 (5th Cir. 1995); <u>see also</u> <u>Roberson v. Alltel Info. Servs.</u>, 373 F.3d 647, 655 (5th Cir. 2004) (stating that the mere fact that an adverse action occurs after protected activity will not always be enough to establish a prima facie case); <u>Raggs v. Miss. Power & Light Co.</u>, 278 F.3d 463, 471 (5th Cir. 2002) (same and adding that Title VII does not permit employees to ignore work rules or job requirements).  Defendant contends that Plaintiff cannot establish a causal link between his EEO activity and the alleged adverse employment actions.

In support of a causal connection, Plaintiff points to his July 2009 EEO complaint and Matlock's subsequent December 2009 mid-year evaluation of Plaintiff, in which Plaintiff received a "minimally successful" rating in three of the five CJEs, and a "fully

successful" rating in the remaining two CJEs, whereas he had received "fully successful" ratings in all five CJEs in his prior June 2009 evaluation.[83]   Plaintiff also links his July 2009 EEO complaint with his being placed on a PIP seven months later, in February 2010.   Additionally, Plaintiff alleges that his March 2010 EEO complaints and participation in Lee's EEO hearing are causally connected to the following: (1) the denial of a within-grade increase, which became effective in May 2010; (2) Matlock's June 2010 memoranda notifying Plaintiff about his unacceptable performance during the PIP and the denial of his within-grade increase; (3) Plaintiff's June 2010 annual performance evaluation for the period June 1, 2009, through May 31, 2010; and (4) Matlock's June 30, 2010 memorandum proposing to reduce Plaintiff's grade and pay or to terminate Plaintiff's employment.   Finally, approximately two months after Plaintiff filed his September 21, 2010 EEO complaint, Jugo terminated Plaintiff.

The court recognizes that the temporal proximity between Plaintiff's protected activities and many of the alleged adverse employment actions is arguably too distant to establish a causal link for purposes of a retaliation claim.   See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (favorably citing cases holding that three- and four-month periods between protected

---

[83]   The court notes that the June 2009 evaluation specifically stated that Plaintiff needed to improve in the areas noted in the narrative "in order to retain the current rating in the future." Doc. 26-3, Ex. 1-14 to Def.'s Mot. for Summ. J., Performance Eval. Dated June 2009.

activity and an adverse employment action were insufficient to establish a causal connection). Out of an abundance of caution, the court will, for the purposes of this motion, assume arguendo that Plaintiff's evidence is sufficient to establish a causal connection between his protected activity and the aforementioned actions taken by Defendant. The court thus proceeds to the next stage of the McDonnell Douglas burden-shifting scheme.

### 2. Defendant's Legitimate Nonretaliatory Reason

Assuming for the sake of argument that Plaintiff's evidence established a prima facie case of retaliation, Defendant has met its burden of showing a legitimate, nonretaliatory reason for its conduct. As discussed above, Defendant cites Plaintiff's continuous and unremedied work deficiencies as the legitimate, nonretaliatory reason for Plaintiff's performance evaluations, placement on a PIP, denial of a within-grade increase, exclusions from other workplace programs, and termination.

### 3. Pretext

Once the employer offers a legitimate, nonretaliatory reason for the alleged employment actions, the plaintiff must offer some evidence from which a jury may infer that retaliation was the real motive or, in the case of Title VII claims, retaliation was a motivating factor in the adverse employment actions. See Smith v. Xerox Corp., 602 F.3d 320, 326-27 (5th Cir. 2010); Gross, 557 U.S. at 175-77 (holding that a mixed-motive instruction in an ADEA case

is never proper).  In the Title VII context, if the plaintiff makes a showing that retaliation was a motivating factor of the defendant's actions, the defendant may limit the plaintiff's recovery by showing that it would have taken the same actions in the absence of the retaliatory motive.  See Smith, 602 F.3d at 327.

Regardless of whether Plaintiff is proceeding on a pretext or mixed-motives argument to sustain his retaliation claims, Plaintiff has offered no competent summary judgment evidence either countering Defendant's proffered legitimate, nonretaliatory reason for its conduct or showing that Defendant's reason, while true, is only one of the reasons for its conduct, and that another 'motivating factor' is retaliation.

With respect to showing pretext, Plaintiff points to the fact that the narrative included in Plaintiff's December 2009 evaluation contained identical portions of the narrative included in Plaintiff's June 2009 evaluation, yet Plaintiff received lower ratings in the December 2009 evaluation than in the June 2009 evaluation.  Thus, Plaintiff reasons, Matlock harbored retaliatory animus against Plaintiff for his EEO activity.  Plaintiff also argues that Defendant's use of the same performance deficiencies to justify Plaintiff's PIP, the denial of Plaintiff's within-grade increase, and Plaintiff's termination constitutes some evidence of retaliation.  Not only does Plaintiff fail to cite any legal support for the underlying supposition that an employer must have a

30

different reason for each of its employment decisions, but the court finds that Plaintiff's arguments on this point fail to raise a question of fact as to the legitimacy of Defendant's proffered reason for its conduct.

As discussed above, Plaintiff also attempts to compare himself to a number of other employees in order to show disparate treatment. See Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005) ("Disparate treatment of similarly situated employees is one way to demonstrate unlawful discrimination and retaliation."). These attempts are insufficient to survive summary judgment because Plaintiff has produced no evidence showing that his alleged comparators were similarly situated or were treated more favorably under nearly identical circumstances.  Merely identifying other employees whom Plaintiff believed enjoyed more opportunities is insufficient to establish disparate treatment without also showing that said employees were similarly situated to Plaintiff.

In a further effort to raise a question of fact as to Defendant's articulated reason for its conduct, Plaintiff contends that Matlock and another manager, Reginald Bolden ("Bolden"), harbored a retaliatory animus.  With respect to Bolden, the court notes that Plaintiff has produced absolutely no competent summary judgment evidence as to Bolden's role in the alleged adverse employment actions.  Nonetheless, Plaintiff points to Bolden's testimony at an administrative hearing that, in response to whether

31

he had information that he thought was relevant to Plaintiff's EEO complaint, Bolden stated: "We have talked about his unwillingness to do the job.  He's playing the game in order to deal with the real issue, which is lack of performance."[84]  As additional evidence of a retaliatory animus, Plaintiff points to Bolden's testimony that he was concerned that Plaintiff's complaints were interfering with other employees' work and that he thought Plaintiff was unethical and untruthful.[85]

Similarly with regards to Matlock, Plaintiff cites Matlock's February 2010 affidavit testimony as evidence of a retaliatory animus.  Specifically, Plaintiff points to Matlock's responses regarding Plaintiff's July 9, 2009 EEO complaint:

> **[Plaintiff] believes that you are doing this because you want to fire him.  Please respond.**
> *I don't want to fire him but if it comes down to it, it will happen.*
> . . .
> **Describe in detail your version of the facts.  If you deny this allegation, do you know of any reason why [Plaintiff] would fabricate this?**
> *I think he wants to get paid, i.e., a Settlement from the government and a paycheck.  I also feel that he doesn't want to work.  He does all of this to keep from doing his job; helping the taxpayers.*[86]

Plaintiff overreads the testimony of Matlock and Bolden.  The court does not interpret this testimony as indicative of a retaliatory

---

[84]    Doc. 30-6, Ex. 5 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Jan. 2012 Admin. Hearing, Bolden's Testimony p. 710.

[85]    See id. pp. 709, 711.

[86]    Doc. 31-17, Ex. 28 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Matlock's Feb. 2010 Aff. Re: Pl,'s July 9, 2009 EEO Compl.

animus on the part of either Matlock or Bolden.    Rather, the testimony, if anything, reiterates Defendant's nonretaliatory reason for its conduct, namely, Plaintiff's deficient work performance. Plaintiff simply points to no evidence indicating that the sentiments expressed by Matlock and Bolden amounted to retaliatory animus, instead relying on "some metaphysical doubt" to link the statements to a perceived retaliatory animus.[87]  Meinecke, 66 F.3d at 81.

Because Plaintiff has failed to raise a triable issue of fact that retaliation was the "but-for" cause or a "motivating factor" of the employment actions taken by Defendant, Defendant's motion for summary judgment on Plaintiff's retaliation claims is **GRANTED**.

## IV.  Conclusion

Based on the foregoing, the court **GRANTS** Defendant's motion for summary judgment.

**SIGNED** in Houston, Texas, this 22nd day of March, 2013.

Nancy K. Johnson
United States Magistrate Judge

---

[87]    Plaintiff also contends that Defendant is liable for retaliation under a "cat's paw" theory of liability.  See Staub v. Proctor Hosp., __ U.S.__ __, 131 S. Ct. 1186, 1192 (2011) ("Animus and responsibility for the adverse action can both be attributed to the earlier agent . . . if the adverse action is the intended consequence of that agent's discriminatory conduct.").  Because Plaintiff has not shown that Matlock harbored discriminatory or retaliatory animus, the court need not reach this argument.